The last case on the calendar is United States v. Maverick. Counsel ready? Yes, Your Honor. You may proceed. Thank you. Your Honor, I'm Palmer Huvestal from Helen, Montana. I'm appearing on behalf of Mr. Matuck. Pursuant to the court's direction, I'm going to start with a comment about the Cepeda case. The court probably knows that Mr. Cepeda has filed a petition for cert to the United States Supreme Court based in large part on Your Honor's concurring opinion in the Cepeda en banc case. So there very well may be, I think, the strong possibility that that case is going to be reviewed by the United States Supreme Court. A couple of cases already ruled that it should be the first component of the Bruce test should be related to federal recognition. So I think personally that there's a possibility that the Supreme Court's going to grant cert. But the status of the law now in the Ninth Circuit is that there's a two-part test under Bruce. First, that the government prove some quantum of Indian blood, and then secondly, that the defendant be a member. Whatever the test is, though, your client stipulated it. Why isn't that the end of the matter? Why doesn't the stipulation simply put that question out of contention? Because I don't think that there's enough there. Under LePure, the court clearly said that a person can be an Indian for purposes in an anthropological sense, in a racial sense, in a cultural sense, in a historical sense. But didn't he stipulate to being an Indian within the meaning of Section 1150? Your Honor, I don't think that it says that. The stipulation, the plain language is simply that Adrian John Mattook is an Indian person. While that might be the language of the statute, I think in order to satisfy the jurisdictional component, in order to satisfy the Bruce elements, in order to satisfy magi as it existed at the time, there had to be something more than the conclusory statement that he was an Indian person. I mean, the government- Why? Because the Bruce test requires it, and LePure says specifically that he can be an Indian in a racial sense, but not necessarily in a federal recognition sense. And so without additional language, without language that says he's an Indian as a matter of law, or he's an Indian for purposes of fulfilling the elements of the offense, or he's an Indian and a member of the federal- At the very least, you can see that this is something that the jury could have used as evidence. Sure. Clearly. Was the jury wrongly instructed? Under Bruce, yes. Did you raise an objection to the instructions? No. So you don't have an objection to the instructions. You get the jury is instructed. It's given a stipulation. It reads the instruction. It has this evidence. Why is that the end of the matter? Well, I think under a plain error review, again- Did you raise a plain error objection to the instruction? Did you raise that in your brief? No. We raised the sufficiency of the evidence argument. We're not talking about- So we don't have a challenge to the instruction for us. You haven't raised it at all. You can't raise the law argument. You haven't raised it below. You haven't raised it in your brief. So the instruction stands. So given an unchallenged instruction and this piece of evidence consisting of the stipulation, why couldn't a rational jury use this? Even if it does not itself stipulate to that element, why wouldn't the jury use this piece of evidence in conjunction with the instruction to find that your client is an Indian for purposes of statute? Well, they could, Your Honor. I mean, frankly, stating it frankly, I think they could. If they could, aren't we required to affirm? Because all we can review is whether they did something they couldn't do. I don't think so. And the reason that I don't think so is because, again, the conclusory statement that Mr. Matuk is an Indian person is insufficient, I think as a matter of fact, as well as a matter of law to establish the federal recognition component. I mean, it's not enough, and the government has the burden of proving the elements of the offense beyond a reasonable doubt. Now, are you saying that Zepeda does not control at this point? I mean, assuming that the cert petition is denied and Zepeda remains the law of the circuit, what does that do to this argument? Well, I guess the question becomes one of a matter of fact. And first, under Bruce, the question is whether there's some quantum of Indian blood. Clearly, I think that there was, and that was satisfied by the enrollment certificate. Racial, you know, tendencies aside, the fact that it's entirely based upon race aside. I think that the certificate in and of itself, it clearly states that, you know, he's a member of the Hualapai tribe. He's 1516th Indian. So it satisfies two things. It satisfies the quantum requirement and also the enrollment requirement, right? Yes, but it does not satisfy the federal recognition component. And I think that that is where the government's. I'm sorry. Why is that? Because of the slight difference in names? Yes. I mean, I think that. Why can't the jury find that those two things are equivalent? I mean, it's just a small difference. Because there's no testimony. There's no proof to establish that. I mean, I think that the district judge could have told them that, of course, this is pure speculation because it didn't happen, but the district court could have told them that the Hualapai tribe or the Havasupai tribe is a federally recognized tribe. People refer to us as the Ninth Circuit. Sometimes they refer to us as the Court of Appeals for the Ninth Circuit. So same thing. They're slightly different words. Our official name is United States Court of Appeals for the Ninth Circuit. But if somebody says Ninth Circuit, that's good enough. People have no doubt as to what that refers to, and they are equivalent. Why isn't this the same kind of equivalence? Why couldn't the jury look at that and say, well, this is the same tribe? Because I think that. What is the difference in language that you actually. Let's focus on the actual words. The difference in language is set forth in our brief. If I can find it. It's on page 21 of our blue brief. Okay. That's the difference in language, and I cite the testimony of Agent Overby on page 8 of our gray brief. The difference is Havasupi tribe of the Havasupi Reservation of Arizona versus Hualapai Indian tribe of the Hualapai Indian Reservation of Arizona. That's correct. That's how it's cited in the BIA list. There's a reason, and I think in our brief we talk about the difference, for example, between the Metoc tribes and the Miwok tribes. There's a difference in the language, and I think that it's a significant difference, and there's a reason why they're listed in this manner in the BIA list. It would have been a simple matter for the government to present the testimony of Agent Overby and for him to say, yeah, it's the same thing. The Hualapai tribe, the Havasupi tribe. Right, but maybe the government wouldn't. Maybe the government would not present evidence in light of a stipulation. Possibly. Let me ask a question from my perspective. Does your client have a claim of ineffective assistance of counsel because the stipulation was entered? At this point, no, Your Honor. I don't know that it's evidence fact-based in the record. I think that would be something that would come up later in a 2255. Right. We don't have that issue before us, but could your client bring a habeas case making that claim and making a record why there's some problem with the stipulation? Yes, Your Honor, he could. The problem I'm having for your side of the case is seeing a sufficiency of the evidence challenge in light of the stipulation. Yes. I think that he could definitely bring a 2255 petition or motion, but, again, I think that the stipulation in and of itself is insufficient based on the Lapeer case and the difference between an Indian from a racial, from an anthropological, cultural, historical point of view as opposed to an Indian for the purpose of establishing federal criminal jurisdiction. I have five minutes left, less than that, so I'll reserve. Okay, thank you. We'll hear from the government. Good morning, Your Honors. Leif Johnson for the United States. Turning to, I guess, first, assuming that the Supreme Court doesn't overrule this Court's en banc decision in Zepeda, it's really on all fours here. We had a stipulation to this tribal enrollment form. It's found in the excerpts of record at page one and volume one, and it establishes exactly what this Court found sufficient in Zepeda, that is blood quantum enrollment in a tribe that is, as a question of law, federally recognized and on the BIA list of federally recognized tribes. That last one is the one Mr. opposing counsel challenges, so you need to respond.  Thank you, Your Honor. If you look at exhibit one, and bearing in mind, Your Honor, that there was no objection raised, obviously the parties stipulated to this exhibit at trial, and that's important here because if there had been an objection raised as to the authenticity of this as coming from the federally recognized tribe, I think the district court could have made certain findings and judicial notice type findings. For instance, on the certificate, it bears the seal of the Hualapai tribe. I think the court could take judicial notice that that is the official seal of the tribe. It appears on all their documents. Louise Benson is the chairwoman of the tribe. That is the Hualapai tribe of Arizona on the Arizona reservation, and the court could have taken judicial notice of that as well. So had there been an objection, and in addition, Peach Springs, Arizona. Peach Springs happens to be the headquarters of the tribe on the reservation. That is the tribe that is listed in the Federal Register. And just to cabin that issue, as the court did in Zapata, we would ask the court to take judicial notice of the Federal Register here. Volume 75, number 190, establishes that that tribe, the Hualapai tribe of Arizona, is listed in 2010 prior to this offense, and then volume 77, number 155, establishes that they were still listed in 2012. Well, what about his argument about the discrepancy in the description of the tribes? Your Honor, this actually, this very issue did come up in the Zapata case as well, and I listened to the oral argument in that case, and much was made in that case about whether Tohono O'odham there was the Tohono O'odham of Mexico and other places. We simply don't have that problem here. There is no controversy created in this record that the Hualapai tribe that bears this seal and has this chairwoman is the tribe, and it was fair for the jury to infer that it is the tribe on the Federal Register. And as a matter of law, the court should recognize that the Federal Register actually lists that tribe. Turning to the stipulation issue. You said we're talking about Exhibit 1, right? Yes. And you referred to some sort of stipulation regarding Exhibit 1. Yes. Where is that? Excuse me, Your Honor. The parties stipulated in the preamble at trial to the enrollment form itself, and that's at Volume 1, Page 6. So just a few pages past that, you'll find. I'm sorry, Volume 1, Page 6 or Tab 6? Page 6, Your Honor. It's in the thin Volume 1, Page 6. And I'll just read it to you. My volume is not consecutively paginated. It's got tabs. It's in the upper right. Oh, I'm sorry. It's Tab 3, and it's in the upper right is Page 6. My mistake, Your Honor. Well, it's Page 6 of the transcript. Yes. It's not Page 6 of the excerpt. Yes. It's Tab 3. Tab 3, okay. Page 6 of the transcript. My apologies. So this is trial transcript? Yes. Okay, go ahead. So when the court was settling preliminary evidentiary issues for trial, obviously it was trying to get stipulations to various pieces of the evidence. The court asked as to whether there's a stipulation, and counsel for the defense agreed. Obviously there was no objection later during the trial about whether or not this contained authentic information. So we think that given those circumstances. I'm sorry, you were going to give me some sort of preamble here, but you were going to point to something on this page. All I'm saying about this particular page. Give me a line number and show me some words. Line number 12 from that page, or actually line number 10. Exhibit number 1 is designated as a certificate, that one? Yes. And a stipulation regarding the status. I'm sorry, so what is the stipulation here? The court asked the defense counsel, is there a stipulation as to the admissibility of exhibit number 1? And Mr. Gallagher, for the defendant, responds, yes, Your Honor. I'm sorry. This only stipulates as to admissibility. Right. It does nothing more. It does nothing more. Obviously there was no objection to the authenticity. It was the same situation if the government had moved it and the court had said it's admitted. Yes. There's nothing more you can milk out of the stipulation. There's nothing more we can milk out of that. You're right, Your Honor. Okay, so it's essentially irrelevant once it's in the record, and they haven't objected to it being in the record. What they objected to is that it doesn't prove what the government needs it to prove, and that is membership in a federally recognized tribe. And that issue was not raised below at all, Your Honor. And that's exactly the posture that Zepeda was in as well. There were questions raised on appeal in that case as to whether it was that particular Tohono O'odham tribe. And we think that given the record here that... How does that work if this is in fact insufficient, if it in fact does not have proof of some element of the government's case, why do they need to object to that below? Why can't they now raise and say, look, we're not objecting to anything that was admitted. We're just saying there's a piece of evidence missing. Well, certainly it would be reviewed under a different standard, Your Honor. If there's no objection below, it's reviewed. What kind of objection would you have below? Does somebody have to move under Rule 29 in order to be able to get a sufficiency challenge? Yes. Let's say, for example, the defendant is really canny and notices the government has failed to put in, let's say it's a bank robbery case, and the government has failed to put in a certificate that the bank is federally insured. And rather than raising it and giving the government the chance to fix the problem by shuttling in a certificate, they stand mute and then on appeal say, ta-da, insufficient evidence. They forgot to put in a piece of evidence that's required in order to establish the crime. Do we judge that by any standard other than the sufficiency of the evidence? No, and clearly... We don't give special sympathy to the court or the government by saying if they only raised it, the government could have gone in and filled its gap, right? True. So if this is insufficient, if this is not enough, is their lack of objection somehow below somehow have any bearing on this? Your Honor, there wasn't... No. Below... So, I mean, that's the correct answer, isn't it? Yes. I mean, if it's not there, it's not there. I agree. Okay, so tell me why it's there. Well... Tell me, you know... Sure, if they had raised it and pointed it out, the government could have gone in and put another witness on, but they're not going to do that. Why should they do that? Why should they help the government out when it has forgotten to put in a key piece of evidence? You know... Why is that exactly the situation? You put in something, you forgot, you made a mistake, you misread a document, and when we look at it here now, there's a gap in the record. Your Honor... You can't even retry him because it's a failure of proof. In this case, there was really no occasion to actually draw much attention to this at all. The defense, it appears, wanted this in, like the government. You couldn't put an officer on the stand to say, these are the same thing. But the party stipulated, and that's... Stipulated what? Stipulated as to the Indian person element, and that's why, in the larger sense, there wasn't any discussion really about this form. It appears from the record, Your Honor, that the defense and the government both wanted this form or information that it contains in the record, because if you look at... Is the Indian person stipulation enough? Yes. I mean, one can be an Indian person and not be a member of a federally recognized tribe. Yes. So the fact that he stipulated being an Indian person could mean he's an Indian person of a non-federally recognized tribe. We disagree here, Your Honor. The whole purpose of the stipulation was to agree to the entirety of the element. Well, you could have said more. Yes, we could have. You could have said in the stipulation, we stipulate that he is a member of a federally recognized tribe, but you didn't. Yes. So given that the case, why isn't the stipulation too narrow to fill the gap to show that he is not just an Indian person, but he's an Indian person? I assume Indian person takes care, let's assume that that takes care of the blood component. Let's just put that aside. But where does it show that he's a member of a federally recognized tribe? I think you need to consider the context in which it was agreed to and submitted, and that context includes several things. First, the defense submitted an instruction on the elements of the offense, and that instruction was that the first element of the crime was the defendant is an Indian person. They did not instruct on the Bruce test or the blood quantum that's required in MAGI or anything else, and that lends the strong inference here that they meant to stipulate to the entirety of the element. Later, the government argued in closing that this stipulation, and I want to read it so I don't misstate it, but it was, quote, and this is page 574 of the record, that the defendant is an Indian person that has been stipulated to by the parties as a fact. The government has proven that. Again, there was no objection. There was no statement from the defense that we hadn't met our burden of establishing that element as a matter of stipulation. So given the larger context in which the stipulation was entered here and given the fact that the parties, that there was no disagreement that that element was met, you can even look at the defendant's closing argument here. He relies on the fact that he's Hualapai. He actually states it in his closing argument. It doesn't matter. You know, this is all sort of, you know, I just want to look at my violin and provide you all the sympathy. The fact is if you didn't put in a piece of proof that's required for the sentence, it doesn't matter what they say. In summation, opposing counsel can skip over it, can agree to it. If the proof is not there, it's not there. Absolutely. And I guess the question is where is the proof? Where is, you know, that's where we are. I mean, I can feel lots of sympathy for you and say you were misled and maybe you were misled, but so what? Well, we weren't misled. We agreed that the element of the crime is that the defendant is an Indian person and that's what we stipulated to. And if Zepeda stands, that's enough, right? Well, if Zepeda stands, we think the enrollment form is enough, and that's a separate issue. But the stipulation itself was we agree the element of the crime is he's an Indian person, and by the way, we've stipulated to that. That's what was presented to the jury. There was no objection from the defense that he didn't meet blood quantum or didn't show federal recognition or anything else. And so either one or both should satisfy this case. If Zepeda stands, the enrollment form came into evidence. It was admitted. It was admitted. There was no contest of his authenticity, and it establishes on its face exactly what the enrollment form did in the Zepeda case. But it's being raised here on appeal that there's a discrepancy. Yes, it is being raised here. I agree on the fact that there is a listing in the BIA, official listing of this tribe, but what's the connection? How do you respond to your opposing counsel's argument? Our position is that it bears on its face indications that it is the very tribe that's listed in the Federal Register. That is, it's the tribe that is in Peach Springs, Arizona. Why don't you point out what on the form matches the Federal Register? And do you have the Federal Register listing there? I do. Okay, so let's compare them. So the Federal Register, I have reading glasses. It's in very small print. Well, I have reading glasses. I came prepared. Qualify Indian tribe of Hualapai. I am now looking at Federal Register dated August 5, 2010, right? October 1, 2010 is the one I'm looking at, but it lists Hualapai Indian tribe. I'm sorry, what page do you have on that? I have a page that says 60811. That's exactly the one I have. Okay, so middle column, one, two, three, four, five from the top is the Hualapai Indian tribe of the Hualapai Indian Reservation. Yes. All right, so now let's look at Exhibit 1 and see how that maps. And obviously it says Hualapai tribe. It says on the certificate. On the certificate. Okay. And we think that that certificate, it was a fair inference from that certificate, that that is the very same Hualapai tribe that's listed in the Federal Register because the Hualapai tribe of the Hualapai Indian Reservation, Arizona, is headquartered in Peach Springs, and its chairwoman is Louise Benson. And we think that the court should consider that as evidence that the Zepeda test is met here. Okay. Thank you. Thank you, Your Honor. You had about five minutes. 4.55 or something like that, or 4.00, something like that. 4.42. Yes, Your Honor. So let's do the same exercise with you as we did with the government. I'm looking at the Federal Register page, and I'm looking at Exhibit 1, and tell me where it doesn't match. Well, Your Honor, first, there's absolutely no evidence in the record. You know, you want to talk about something else, but I've directed a specific question to you. Yes. Okay, you can say whatever else you have to say after you answer my question, but I've asked you a question. You want to play along? I'll play. There we go. I can't remember what your question is. I apologize. Well, because you weren't listening, because you wanted to say something else. That's right. I'm looking at the Federal Register, page 60811. Do you have that in front of you? No, I don't, but I can borrow it. Oh, I'm sure the government will let you have its copy, okay? And do you have Exhibit 1? Yes. Okay, so tell me where it doesn't match. Well, Your Honor, set forth in our brief, it doesn't match in that the specific language of the Federal Register is not anywhere in Exhibit 1. It doesn't say Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona. It just says Hualapai Tribe. Well, it says Hualapai Indian Tribe. All right, isn't that enough? No, and the reason is because if we look at the ---- What's the Ninth Circuit? Well, the Ninth Circuit Court of Appeals is different than a nomadic band of Indians who were not geographically set in a particular place. But the certificate says Arizona on it, whatever it is, Peach Valley? Peach Springs. Peach Springs, sure. Getting to what I was going to say, there's absolutely no evidence in the record from Agent Overby or anybody else to establish that the Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona, is the same as the Hualapai Tribe that's listed in Government Exhibit 1. There's no evidence. Why couldn't the jury find that's the case? I don't think that they can make that inference. I think it's an evidentiary gap. The government had the burden of proving that. All they had to do was put a witness on the stand to say that it was the same. They didn't. And we don't know, as a matter of fact, that that's correct because the record doesn't establish it. There's no evidence that Louise Benson is the chairwoman of this Hualapai Indian Tribe of the Hualapai Indian Reservation. It's just lacking, Your Honor. And I don't think that it's fairly an inference that can be drawn rather than a filling of the evidentiary gap. I think there's a difference between the two, and that's what the CEPEDA panel first, in its original opinion, said. I don't think that there's a proper inference. I think that it calls upon the court to fill in an evidentiary gap. Okay. Thank you. The case just argued will stand submitted. We are adjourned.
judges: Kozinski, O'scannlain, Gould